STATE OF NORTH CAROLINA v. PAUL JOSEPH SALVETTI

No. COA09-504

(Filed 19 January 2010)

### 1. Appeal and Error— motion to withdraw Alford plea—appeal as a matter of right

Defendant was entitled to appeal as a matter of right the denial of his motion to withdraw an *Alford* plea.

### 2. Appeal and Error— petition for certiorari granted—ancillary errors not considered

Where defendant's petition for *certiorari* from the adjudication of his guilty plea was granted, the appellate court did not decide whether he had a direct right of appeal for ancillary errors.

### 3. Criminal Law— Alford plea—adjudication—inquiry by judge

Defendant's argument that he would have changed his *Alford* plea if the court had informed him of his rights was not persuasive where the trial court did not personally address defendant and inform him of this right, but defendant signed the Transcript of Plea stating that he understood that he had the right to remain silent, the trial judge inquired as to whether defendant had reviewed the Transcript of Plea with his attorney and if he understood it, and defendant answered yes to both questions.

### 4. Criminal Law— Alford plea—erroneous information about length of sentence

Considering the totality of the circumstances, the Court of Appeals was not persuaded that defendant would have changed his plea had the trial judge personally informed him that the length of the maximum sentence was nine months longer than that shown on the worksheet. Defendant entered an *Alford* plea against the advice of his counsel for the purpose of protecting his wife and children.

STATE v. SALVETTI

[202 N.C. App. 18 (2010)]

**5. Criminal Law— Alford plea—treated as guilty plea—defendant's knowledge**

The trial judge's failure to personally advise defendant that he would be treated as guilty did not prejudice defendant's decision to enter an *Alford* plea where defendant signed a Transcript of Plea that indicated that he would be treated as guilty, the trial judge asked defendant whether he had reviewed the transcript with his attorney and understood it, and the trial judge referred to defendant's plea as a guilty plea multiple times and stated that defendant was going to jail based upon the evidence.

**6. Criminal Law— Alford plea—informed choice**

Considering defendant's colloquy with the judge and defendant's answers to questions about the Transcript of Plea, the trial court in fact determined that an *Alford* plea was the product of defendant's informed choice.

**7. Criminal Law— acceptance of Alford plea—independent evidence of guilt**

There was substantial evidence of defendant's guilt that was independent of his *Alford* plea and was sufficient to support acceptance of the plea.

**8. Criminal Law— Alford plea—package deal with wife—not improper pressure**

The prosecutor did not use improper pressure to induce defendant's *Alford* plea by offering a "package deal" that included defendant's wife. While not directly addressed in North Carolina, other jurisdictions have found that "package deals" are not *per se* involuntary.

**9. Criminal Law— acceptance of Alford plea—further inquiry not necessary**

The trial court's inquiry into the voluntariness of defendant's *Alford* plea was sufficient where defendant signed the Transcript of Plea and made statements in court to the effect that his plea was not coerced. There is nothing in the record to indicate that the outcome would have been different with further inquiry.

**10. Criminal Law— Alford plea—motion to withdraw—competency of counsel**

The trial court did not err by denying defendant's post-sentencing motion to withdraw his *Alford* plea where defendant

alleged that his counsel was incompetent by not withdrawing the plea after the court challenged the decision to not try the case. The trial court was in the best position to determine the competency of counsel and denied a motion for appropriate relief based on the same argument.

**11. Criminal Law— Alford plea—consistent assertion of innocence—post-sentencing motion to withdraw**

The trial court did not err by refusing to allow defendant to withdraw an *Alford* plea where defendant consistently asserted his innocence. An *Alford* plea does not require an admission of guilt and the plea transcript indicated that defendant entered the plea because he felt it was in his best interest. Precedent cited by defendant concerning the short time between the plea and the motion to withdraw involved a pre-sentencing motion, rather than a post-sentencing motion, as here.

Appeal by defendant from an order denying a motion to withdraw his plea entered 10 October 2008 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 17 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General R. Kirk Randleman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant appellant.*

HUNTER, JR., Robert N., Judge.

On 6 October 2008, defendant, Paul Joseph Salvetti, entered an *Alford* guilty plea to one count of Class E felony child abuse pursuant to a plea agreement in Forsyth County Superior Court and was sentenced to an active term of 20-33 months' imprisonment. On 8 October 2008, defendant filed a motion to withdraw the guilty plea. On 10 October 2008, following a hearing on the motion in Forsyth County Superior Court, Judge Burke denied defendant's motion to withdraw the plea. Defendant gave timely notice of appeal under N.C. Gen. Stat. § 15A-1444(e) (2009). Additionally, defendant filed a petition for writ of certiorari for assignments of error for which defendant believed he did not have a right of appeal. Defendant asks that the judgment entered by the trial court be vacated. We hold that defendant was not prejudiced by the denial of his motion to withdraw the *Alford* plea and, as such, the trial court did not err. We grant de-

fendant's petition for certiorari on defendant's remaining assignments of error and accordingly overrule each assignment of error.

## I. Background

On 27 August 2007, defendant was indicted by a Forsyth County Grand Jury on one count of Class E felony child abuse and one count of Class 1 misdemeanor contributing to the delinquency of a juvenile. On 7 July 2008, defendant was indicted by a Forsyth County Grand Jury on one count of Class E felony child abuse, one count of Class 1 misdemeanor contributing to the delinquency of a juvenile, and one count of Class C felony child abuse. Defendant's wife was indicted for similar charges. The charges stemmed from the couple's alleged abuse of defendant's 13-year-old adopted son, T.S. ("Pesha"), over a three-month period in 2007. The indictments charged defendant and his wife with "intentionally inflicting serious physical injury, starvation," knowingly causing a condition of a lack of education and proper care, and intentionally inflicting emotional and mental injury upon Pesha.

Defendant entered into a plea agreement on 6 October 2008. The terms of the plea agreement were contained in the Transcript of Plea (Form AOC-CR-300, Rev. 2/06) signed by defendant. Under the terms of the plea, defendant entered an *Alford* guilty plea to one count of Class E child abuse, and the court dismissed the Class C child abuse charges and misdemeanor charges for contributing to the delinquency of a juvenile. Defendant's wife also entered into a plea agreement on 6 October 2008. Under the terms of her plea agreement, defendant's wife entered an *Alford* guilty plea to two charges of felony child abuse, and one charge of misdemeanor contributing to the delinquency of a juvenile. Defendant's signed Transcript of Plea also contained a list of questions asking defendant whether he understood his rights and the consequences of his plea. Among the questions asked on the Transcript of Plea were: (1) whether defendant understood his right to remain silent; (2) whether defendant understood he was pleading guilty; (3) whether defendant considered it in his best interest to plead guilty; and (4) whether defendant understood that upon entering his *Alford* guilty plea he would be treated as guilty whether or not he admitted he was in fact guilty. Defendant answered "Yes" to all of the questions. In addition, a question contained in the Transcript of Plea asked defendant if anyone had promised him anything or threatened him in any way to cause him to enter the plea against his wishes, to which defendant answered "No."

**STATE v. SALVETTI**

[202 N.C. App. 18 (2010)]

On 6 October 2008, the cases of defendant and his wife were called for a joint plea proceeding. The trial court conducted the following colloquy pursuant to N.C. Gen. Stat. § 15A-1022 (2009):

THE COURT: Have you gone over the transcript of plea with your lawyers?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: Do you understand the questions on the transcripts of plea?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: Do you understand the nature of the charges against you?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes.

THE COURT: Are you satisfied with your lawyers' services?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: Do you understand you have the right to plead not guilty and be tried by a jury?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: Do you understand when you plead guilty, you waive all your Constitutional rights to trial by jury?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: And you're pleading guilty, Paul, to Class E child abuse, and, Debbie, to felony child abuse, contributing to the delinquency of a minor and felony child abuse, all charges are consolidated in one Class E felony. Is that correct?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

STATE v. SALVETTI

[202 N.C. App. 18 (2010)]

THE COURT: Other than this plea arrangement, has anyone threatened you or promised you anything to cause you to enter this plea against your wishes?

Mrs. Salvetti: No, sir.

Mr. Salvetti: No.

THE COURT: It is with your own free will, fully understanding what you're doing?

Mrs. Salvetti: Yes, sir.

Mr. Salvetti: Yes, sir.

THE COURT: Do you have any questions about what I've just said or anything else connected with your case?

Mrs. Salvetti: No, sir.

Mr. Salvetti: No, sir.

The State then presented testimony from the Department of Social Services ("DSS") attorney Terry Boucher ("Boucher") to provide a factual basis for the plea. Boucher testified that Pesha contacted DSS in May 2007 to complain about the treatment he received from his parents. Boucher stated that defendant and his wife withdrew Pesha from public school in January 2007 and subsequently confined him to his bedroom with bare walls, no furniture, and boarded windows for the next three months. According to Boucher, Pesha was given "very limited food" and he had to "earn his way to have regular meals." When Pesha "escaped" from his room, he was hospitalized at North Carolina Baptist Hospital for approximately one week, during which time he gained approximately 10 pounds on a normal adolescent diet.

The State then called Pesha to read a victim impact statement wherein Pesha described the treatment he received from defendant and his wife. Pesha testified that defendant's wife made him eat poisoned fish, drink his own urine, and hit him with a baseball bat and a frying pan. Pesha stated that defendant and his wife took him to see Dr. Ronald Federici ("Federici"), a pediatric neuropsychologist who specialized in foreign adoption medicine and child psychology. However after the doctor visit, his treatment worsened. Pesha testified that from February through May of 2007 he was "hungry and cold," lost weight, suffered from headaches and stomachaches, and had to earn his food by working.

Following the victim impact statement, the trial court announced it was going to pronounce an active sentence. Defendant and his wife both objected to the testimony of Boucher and Pesha. The trial court then asked defendant and his wife why they were entering guilty pleas and not taking the case to trial. Defendant's counsel responded that defendant was not guilty of the crime but was pleading guilty against counsel's advice to protect his wife and children. Defendant's counsel explained that defendant's wife could not get a plea deal unless defendant pled guilty.

Federici testified that he evaluated Pesha over a three-day period in February of 2007. Federici testified that Pesha's adoption records revealed multiple factors that are known to contribute to both learning and behavior issues. According to Federici, Pesha's records indicated his parents were Roma Gypsy, placing Pesha in a high risk group for genetic problems that result from inbreeding. Pesha's records further indicated that he suffered "neurotoxic exposure to alcohol." Federici concluded that Pesha suffered from a number of psychological and developmental problems including: alcohol-related developmental disabilities, Attention Deficit Hyperactivity Disorder, language development disabilities, and pseudo-psychotic logic. Pesha was "out of control . . . a kid who couldn't be handled and couldn't be trusted." Defendant and his wife were overwhelmed by the intense conflict resulting from Pesha's behavior.

As part of Pesha's treatment, Federici advised defendant and his wife in developing a plan to help reform Pesha's behavioral problems, stripping Pesha of his privileges and forcing him to earn them back through good behavior. The plan included a "fixed-price" menu from which Pesha would have to earn his food through his reformed behavior. Federici testified, however, that to his knowledge defendant and his wife never withheld food from Pesha.

Prior to sentencing, defendant's counsel again stated to the trial court that defendant was entering the *Alford* plea against counsel's advice. Defendant's counsel stated that he advised defendant that he should not plead and expressly told defendant, "You're pleading guilty to a Class E felony." Defendant's counsel stated that he thought defendant's motives were noble, though "ill thought out," but he was entering an *Alford* plea to take advantage of the plea bargain.

The trial court sentenced defendant to a minimum of 20 months' and a maximum of 33 months' imprisonment. Two days later, on 8 October 2008, defendant filed two motions: (1) a motion to withdraw

the guilty plea, alleging defendant entered his plea in order to secure a plea deal for his wife, and (2) a motion for appropriate relief alleging ineffective assistance of counsel. The trial court denied both motions in a hearing held on 10 October 2008. The trial court explained that defendant had not expressed any desire to change his plea during the trial court's 6 October 2008 questioning of defendant and noted a lack of any legitimate basis for withdrawing the plea. Defendant appeals the trial court's order.

## II. Analysis

### A. Jurisdiction

**[1]** The jurisdiction of this Court for defendant's direct appeal is established by N.C. Gen. Stat. § 15A-1444(e) (2009) and by means of writ of certiorari. The aforementioned statute provides the following in pertinent part:

> [E]xcept when a motion to withdraw a plea of guilty or no contest has been denied, the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari.

N.C. Gen. Stat. § 15A-1444(e).

A post-sentencing motion to withdraw a plea is a motion for appropriate relief. *See State v. Handy*, 326 N.C. 532, 536, 391 S.E.2d 159, 161 (1990) (explaining that "[a] motion to withdraw a guilty plea made before sentencing is significantly different from a post-judgment or collateral attack on such a plea, which would be by a motion for appropriate relief"). N.C. Gen. Stat. § 15A-1444(f) provides that "[t]he ruling of the court upon a motion for appropriate relief is subject to review upon appeal or by writ of certiorari as provided in G.S. 15A-1422."

In light of N.C. Gen. Stat. § 15A-1444 and our Supreme Court's decision in *State v. Dickens*, we hold that defendant is entitled to appellate review of the denial of his motion to withdraw the *Alford* plea as a matter of right. *See* 299 N.C. 76, 79, 261 S.E.2d 183, 185 (1980) (holding the defendant was entitled to appeal as a matter of right per section 15A-1444(e), when the superior court denied the defendant's post-sentencing motion to withdraw his guilty plea).

**[2]** Defendant also makes multiple assignments of error which are not directly related to the motion to withdraw his plea. Defendant's

remaining assignments of error allege that the trial court erred in adjudicating his guilty plea. The State contends these remaining issues are beyond the jurisdictional grant contained in N.C. Gen. Stat. § 15A-1444.

Defendant, out of an abundance of caution, has also filed a petition for writ of certiorari for these remaining assignments of error. We grant defendant's petition for writ of certiorari and review each assignment of error. Because we are granting this writ, we do not decide whether a defendant does or does not have a direct right of appeal for ancillary errors which are not directly related to a motion to withdraw an *Alford* plea under N.C. Gen. Stat. § 15A-1444.

B. Inform and Advise Defendant

**[3]** Defendant contends that the trial court erred in adjudicating his guilty plea and alleges that the trial court failed to inform defendant of his rights and advise him of the consequences of his plea in violation of N.C. Gen. Stat. § 15A-1022 (2009). Specifically, defendant argues that the trial judge failed to inform him of the following: (1) his right to remain silent; (2) the maximum possible sentence on the charges for which defendant was being sentenced; and (3) failed to inform him that if defendant pled guilty he would be treated as guilty. As a result of these alleged errors, defendant argues that the trial court's judgment must be vacated. We disagree.

Because a plea of guilty requires a defendant to forfeit fundamental rights such as a trial by jury, our legislature has codified the procedural requirements governing a superior court's adjudication of guilty pleas. N.C. Gen. Stat. § 15A-1022. Prior to accepting a plea of guilty, section 15A-1022 requires a superior court judge to personally address a defendant and (1) inform defendant of his right to remain silent, per section 15A-1022(a)(1); (2) inform defendant of the maximum and minimum possible sentences on .the charges for which defendant is being sentenced, per section 15A-1022(a)(6); and (3) advise defendant that if he pleads guilty, he will be treated as guilty even if he does not admit guilt, per section 15A-1022(d). *See* N.C. Gen. Stat. § 15A-1022.

This Court has declined to adopt a strict, mechanical standard of compliance with the requirements of section 15A-1022. *State v. Hendricks*, 138 N.C. App. 668, 670, 531 S.E.2d 896, 898 (2000) (declining to adopt a technical approach to compliance with N.C. Gen. Stat. § 15A-1022 where the trial judge failed to make some of the inquiries required by the statute); *see State v. Williams*, 65 N.C. App. 472, 481,

STATE v. SALVETTI

[202 N.C. App. 18 (2010)]

310 S.E.2d 83, 88 (1983) (declining to adopt a technical approach to compliance with N.C. Gen. Stat. § 15A-1022 where the trial judge made none of the inquiries required by the statute). Failure to strictly adhere to the requirements of the statute, without more, does not entitle defendant to have the judgment vacated. *Hendricks*, 138 N.C. App. at 670, 531 S.E.2d at 898. Defendant must show that he was prejudiced as a result of the error. *Id.* When assessing whether defendant was prejudiced by non-compliance with section 15A-1022, our Courts "must look to a totality of the circumstances" surrounding the acceptance of the plea "and determine whether non-compliance with the statute either affected defendant's decision to plead or undermined the plea's validity." *Id.* at 670-71, 531 S.E.2d at 899 (citing *Williams*, 65 N.C. App. at 481, 310 S.E.2d at 83). In order to vacate a defendant's plea, the trial court's error must have prejudiced the defendant such that there exists a "reasonable possibility that a different result could have or would have been reached" had the error not occurred. *Williams*, 65 N.C. App. at 481, 310 S.E.2d at 88.

As in *Williams* and *Hendricks*, it is clear that the trial court in the present case failed to adhere to the procedural requirements of section 15A-1022. *See Williams*, 65 N.C. App. at 481, 310 S.E.2d at 88; *Hendricks*, 138 N.C. App. at 669, 531 S.E.2d at 898. The trial judge did not personally address defendant and inform him of his right to remain silent. Defendant did, however, sign the Transcript of Plea stating that he understood that he had the right to remain silent. Additionally, the trial judge inquired as to whether defendant had reviewed the Transcript of Plea with his attorney and if he understood the questions in the Transcript of Plea. Defendant answered affirmatively to both questions. In light of these circumstances, defendant's argument that he would have changed his plea had the trial court verbally informed him of his right to remain silent is not persuasive and is without merit.

[4] Defendant next argues that the judgment must be vacated because the trial judge failed to inform defendant of the maximum sentence for which defendant was being sentenced as required by section 15A-1022(a)(6). *See* N.C. Gen. Stat. § 15A-1022(a)(6). We disagree.

The record reveals that a worksheet was attached to defendant's signed Transcript of Plea incorrectly stating the maximum sentence as eighty-nine months. The correct maximum sentence was ninety-eight months. Defendant argues that this error caused defendant to under-appreciate the seriousness of his plea. Looking at the totality of

the circumstances, we are not persuaded that defendant would have changed his plea had the trial judge personally informed him that the length of the maximum sentence was nine months longer than the eighty-nine-month maximum sentence indicated on the worksheet. For instance, as stated above, defendant pled guilty pursuant to the *Alford* plea agreement against the advice of his counsel for the purpose of protecting his wife and children. Accordingly, defendant's argument is without merit.

[5] Defendant also argues that the judgment must be vacated because the trial judge failed to inform defendant that by entering an *Alford* plea defendant would be treated as guilty as required by section 15A-1022(d). A review of the colloquy between the trial judge and defendant reveals that the trial judge did not personally inform defendant that defendant would be treated as guilty. Defendant did, however, sign the Transcript of Plea indicating affirmatively that he considered it to be in his best interest to enter an *Alford* guilty plea and that upon entry of his *Alford* guilty plea, defendant would be treated as guilty whether or not he admitted that he was in fact guilty. Additionally, the trial judge asked defendant whether he reviewed the Transcript of Plea with his attorney and whether he understood the questions in the Transcript of Plea. Defendant answered affirmatively to both questions. Furthermore, the transcript reveals that the trial judge referred to defendant's plea as a "guilty plea" multiple times and stated that defendant was "going to jail based upon the evidence [] heard." We conclude, in light of the circumstances of this case, that the trial judge's failure to personally advise defendant that he would be treated as guilty did not prejudice defendant's decision to plead. Accordingly, defendant's argument lacks merit and is overruled.

C. Trial Court's Findings

[6] Defendant also argues that the trial court erred in adjudicating his guilty plea. Specifically, defendant alleges that the trial court failed to determine whether defendant's plea was a product of defendant's informed choice as required by section 15A-1022(b). Based on the alleged error, defendant requests that this Court vacate the trial court's judgment. We disagree.

Prior to accepting a defendant's guilty plea, section 15A-1022(b) prohibits a superior court judge from accepting a plea of guilty "without first determining that the plea is a product of informed choice." N.C. Gen. Stat. § 15A-1022(b). The transcript reveals that the trial judge personally addressed defendant and inquired as to whether

defendant (1) understood the nature of the charges, (2) understood that he had the right to plead not guilty, (3) had reviewed and understood the questions in the Transcript of Plea, (4) was satisfied with his lawyer's services, and (5) understood that he was waiving his right to trial by jury. Defendant answered affirmatively to all of these questions. The trial judge further inquired as to whether defendant was threatened by anyone or promised anything other than the plea agreement that caused him to enter the plea against his wishes. Defendant answered, "No." Finally the trial judge asked if defendant entered the plea of his own free will and if he fully understood what he was doing. Defendant answered, "Yes, sir." In light of this colloquy and defendant's answers to the questions on the Transcript of Plea, we find the trial court did determine that defendant was fully informed of the consequences of his choice to enter an *Alford* plea. As such, we reject defendant's argument.

D. Factual Basis for the Plea

**[7]** Defendant alleges the trial court committed two errors relating to the factual basis for his *Alford* plea. First, defendant alleges that the trial court failed to determine that there was a factual basis for the plea. Second, defendant alleges the factual basis for the plea was insufficient to support the *Alford* plea. As a result of these errors, defendant argues that the trial court's judgment must be vacated. We disagree.

Section 15A-1022(c) requires that, prior to accepting a plea of guilty, a superior court judge must determine that there is a factual basis for a plea. N.C. Gen. Stat. § 15A-1022(c). Defendant asserts that the record shows the trial court did not make any "factual basis" determination during defendant's 6 October 2008 plea proceeding as required by section 15A-1022(c). In support of his argument defendant cites our Supreme Court's holdings in *State v. Sinclair* and *State v. Agnew*. Defendant contends that *Sinclair and Agnew* hold that a Transcript of Plea, alone or with a stipulation to a factual basis, is insufficient to provide the factual basis for accepting a defendant's plea. *See State v. Sinclair*, 301 N.C. 193, 270 S.E.2d 418 (1980); *State v. Agnew*, 361 N.C. 333, 643 S.E.2d 581 (2007). We find defendant's reliance on *Sinclair* and *Agnew* to be misplaced.

In *Sinclair*, our Supreme Court noted that section 15A-1022(c) requires the trial court to make a determination that a factual basis exists to support the defendant's plea. *See* 301 N.C. at 199, 270 S.E.2d at 421. In addressing whether the trial court's findings satisfied the

requirements of section 15A-1022(c), the Court held that the " 'trial judge may consider any information properly brought to his attention in determining whether there is a factual basis for a plea of guilty[.]' " *Id.* at 198, 270 S.E.2d at 421 (quoting *State v. Dickens*, 299 N.C. 76, 79, 261 S.E.2d 183, 185-86 (1980)). That which the trial court does consider, the Court held, "must appear in the record, so that an appellate court can determine whether the plea has been properly accepted." *Id.* Because the trial judge in *Sinclair* relied upon evidence that was later vacated by this Court, the record was then void of evidence sufficient to support the defendant's pleas. The Supreme Court further held the "defendant's bare admission of guilt" contained in the Transcript of Plea does not provide the " 'factual basis' contemplated by G.S. 15A-1022(c)." *Sinclair*, 301 N.C. at 199, 270 S.E.2d at 421. Rather, "some substantive material independent of the plea itself [must] appear of record which tends to show that defendant is, in fact, guilty." *Id.* at 199, 270 S.E.2d at 421-22.

*Agnew* is also distinguishable from the present case. *See* 361 N.C. 333, 643 S.E.2d 581. In *Agnew*, during the plea hearing the trial judge personally addressed the defendant and asked him the questions listed on the Transcript of Plea. *See id.* at 334, 643 S.E.2d at 582. The trial judge, however, did not consider any evidence to support the factual basis of the plea other than the defense counsel's stipulation that a factual basis to support the plea existed. *Id.* The trial judge summarily held that, "[b]ased on that stipulation," a factual basis to support the entry of the plea existed. *Id.* In finding that the trial court erred, the Supreme Court affirmed its holding of *Sinclair* that the Transcript of Plea alone provides inadequate factual basis for acceptance of a guilty plea and that "additional substantive information" is required by section 15A-1022(c). *Id.* at 337, 643 S.E.2d at 584.

Furthermore, the Supreme Court held in *State v. Dickens* that a factual basis for the defendant's guilty plea based upon a prior conviction on the same charges and the defendant's statement in the Transcript of Plea that he was in fact guilty was sufficient to meet the requirements of section 15A-1022(c). *Dickens*, 299 N.C. at 82, 261 S.E.2d at 187.

In light of these cases, we find defendant's argument that the trial court failed to make a factual basis determination to be without merit. A review of the record reveals that, after the trial judge conducted a colloquy with defendant regarding his understanding of the charges against him and his entry of a guilty plea, the trial court accepted evidence from both parties in the form of testimony from the

DSS' attorney, the victim, and defendant's expert witness. Therefore, we find the record replete with evidence to support a factual basis and proper acceptance of defendant's guilty plea. *See Sinclair*, 301 N.C. at 198, 270 S.E.2d at 421.

Defendant further contends that the judgment must be vacated because there was an insufficient factual basis to support defendant's *Alford* plea. Specifically, defendant contends that starvation is defined as the willful refusal to feed and nourish another and that the evidence in the record is insufficient to support a finding of willfulness. We disagree.

As discussed above, our Supreme Court has held that section 15A-1022(c) requires that some "substantive material independent of the plea itself appear of record which tends to show that the defendant is, in fact, guilty." *Sinclair*, 301 N.C. at 199, 270 S.E.2d at 421-22. Additionally, " '[t]he trial judge may consider any information properly brought to his attention[.]' " *Id.* at 198, 270 S.E.2d at 421 (quoting *Dickens*, 299 N.C. at 79, 261 S.E.2d at 185-86).

Defendant tendered his *Alford* plea to a Class E felony of child abuse for the starvation of his adopted son, Pesha. At the outset of the 6 October 2008 hearing, defendant's counsel stipulated to the existence of a factual basis for defendant's plea.

The State offered the testimony of DSS Attorney Boucher who testified to the "horrendous" conditions in which Pesha was forced to live, that he was given limited food, and had to "earn his way to have regular meals." Boucher further testified that when Pesha escaped from his home and was subsequently hospitalized, Pesha gained approximately 10 pounds within a week while eating a normal diet. Pesha also testified by reading a victim impact statement in which he described how he was forced to work "very hard" to earn food. Defendant then offered his own expert's testimony.

While defendant argues that the evidence was insufficient to show willful refusal to feed and nourish Pesha, we find the record reveals substantial evidence independent of the plea itself which tends to show the defendant is guilty of the charge and thus sufficient to support the trial court's acceptance of the guilty plea.

E. Improper Pressure

[8] Defendant contends the judgment must be vacated because the prosecutor brought improper pressure upon defendant to induce defendant's guilty plea in violation of section 15A-1021(b). We disagree.

Section 15A-1021(b) states: "No person representing the State or any of its political subdivisions may bring improper pressure upon a defendant to induce a plea of guilty or no contest." N.C. Gen. Stat. § 15A-1021(b) (2009). The official commentary regarding the prohibition of improper pressure in section 15A-1021(b) lists three means by which a prosecutor shall not seek to induce a guilty plea: by charging or threatening to charge defendant with a crime that either is not supported by the facts, or is not ordinarily charged for defendant's alleged acts, nor by threatening defendant with a sentence more severe than is ordinarily imposed upon defendants who plead not guilty. *See* N.C. Gen. Stat. § 15A-1021(b) (official comment).

We find nothing in the record to indicate any of these forms of improper pressure was utilized by the prosecutor. As held above, we find there is a sufficient factual basis for the plea, thus the charges against defendant. Furthermore, there is no allegation that defendant was charged with a crime not ordinarily charged for the alleged acts, nor that he was threatened with a sentence more severe than would be imposed for pleading not guilty.

Defendant specifically alleges that the prosecutor's offer of a "package deal" plea constituted undue pressure and violated defendant's constitutional rights. Under the terms of the "package deal" plea, the prosecution was willing to offer defendant's wife, who was also facing child abuse charges, a plea deal, but only if defendant agreed to plead guilty.

Package plea deals offer leniency for a third party that are made contingent on the defendant pleading guilty. While North Carolina appellate courts have not directly addressed the issue of the voluntariness of package deal pleas, other jurisdictions both federal and state, have found they are not per se involuntary. *See United States v. Mescual-Cruz*, 387 F.3d 1, 7 (1st Cir. 2004); *Howell v. State*, 185 S.W.3d 319, 334 (Tenn. 2006) (concluding that a majority of jurisdictions have found package pleas are not invalid per se).

The Fourth Circuit has noted that package plea deals present a greater risk of inducing a false guilty plea by altering the defendant's assessment of the attendant risks. *U.S. v. Marrow*, 914 F.2d 608, 613 (4th Cir. 1990). We hold that the prosecutor did not use improper pressure to induce defendant's guilty plea, thus defendant's argument is without merit.

F. Inquiry into the Voluntariness of Defendant's Plea

[9] Defendant next argues the judgment must be vacated because the trial court failed to make a special inquiry into the voluntariness of defendant's *Alford* plea. We disagree.

Section 15A-1022(b) requires the trial judge to determine, by personal inquiry of the prosecutor, defendant's counsel and defendant if any improper pressure was exerted in reaching the plea agreement in violation of section 15A-1021(b). *See* N.C. Gen. Stat. § 15A-1022(b). The Fourth Circuit has noted that package plea deals which promise leniency for a third party present a greater risk of inducing a false guilty plea by altering the defendant's assessment of the attendant risks in the deal. *Marrow*, 914 F.2d at 613. As a result, "special care" must be given to determine if such a plea is voluntary. *Id.*

Here, we find the trial court's inquiry into the voluntariness of defendant's plea was sufficient. Defendant signed the Transcript of Plea on which he stated that he had not been threatened or promised anything, other than the plea itself, that had caused him to enter this plea against his wishes; and that he entered his plea of his own free will, with full understanding of what he was doing. The trial court personally addressed defendant and confirmed that defendant had read the Transcript of Plea and understood the questions in the transcript. The trial court then verbally asked defendant the same questions in the Transcript of Plea regarding voluntariness of the plea. To the question of whether anyone had made any threats or promises that caused him to enter his plea against his wishes, defendant responded, "No." To the question of whether he was entering the plea of his own free will, defendant responded, "Yes, sir." Moreover, prior to sentencing defendant admitted in court that he was entering the plea for the sake of his children and his wife. We agree with the Fourth Circuit's conclusion that "[w]hile not, in an appropriate case, an insurmountable barrier to a defendant who claims that his plea was coerced, such declarations made in open court carry a strong presumption of veracity." *Marrow*, 914 F.2d at 613-14.

We find nothing in the record that leads this Court to believe that had the trial court made some further inquiry of defendant that the outcome would have been different. Thus, we overrule defendant's assignment of error and hold the trial court made sufficient inquiry into the voluntariness of defendant's plea.

## II. Denial of Motion to Withdraw Guilty Plea

**[10]** In defendant's final argument he contends the judgment must be vacated because the trial court's denial of defendant's post-sentencing motion to withdraw his guilty plea was erroneous as a matter of law. We disagree.

Defendant relies upon our Supreme Court's decision in *State v. Handy*, 326 N.C. 532, 391 S.E.2d 159 (1990). In *Handy*, the Court held there is a "fundamental distinction" between motions to withdraw guilty pleas made pre-sentencing and motions made after sentencing when the defendant is dissatisfied with the sentence imposed. *Id.* at 536, 391 S.E.2d at 161. While a pre-sentencing motion to withdraw a guilty plea should be permitted for "any fair and just reason," *id.* at 539, 391 S.E.2d at 162, when a defendant seeks to withdraw a guilty plea after sentence, " 'it should be granted only to avoid manifest injustice.' " *Id.* at 536, 391 S.E.2d at 161 (quoting *State v. Olish*, 164 W.Va. 712, 715, 266 S.E.2d 134, 136 (1980)). "Factors to be considered in determining the existence of manifest injustice include whether: Defendant was represented by competent counsel; Defendant is asserting innocence; and Defendant's plea was made knowingly and voluntarily or was the result of misunderstanding, haste, coercion, or confusion." *State v. Russell*, 153 N.C. App. 508, 509, 570 S.E.2d 245, 247 (2002).

In addition to all the reasons stated in defendant's petition for writ of certiorari discussed above, defendant alleges that his assertion of innocence demonstrates that the denial of his motion to withdraw his plea is manifestly unjust. Moreover, defendant alleges his counsel was incompetent at the plea hearing as evidenced by the fact that he did not withdraw defendant's plea after the trial court questioned the wisdom of not trying the case. Defendant filed a motion for appropriate relief alleging ineffective assistance of counsel, which was denied. The trial court was in the best position to make a determination on the competency of defendant's counsel. We will not disturb the holding on appeal. *See State v. Streater*, —— N.C. App. ——, ——, 678 S.E.2d 367, 378 (2009).

**[11]** Defendant's next argument in support of his contention that withdrawal of his *Alford* guilty plea would avoid manifest injustice is that he has consistently asserted his innocence. Defendant's reliance on *Russell* is misplaced. The defendant in *Russell* entered a plea of guilty. *See* 153 N.C. App. at ——, 570 S.E.2d at 246. In the present case, defendant entered an *Alford* plea which does not require admission

of guilt. *N.C. v. Alford*, 400 U.S. 25, 37, 27 L. Ed. 2d 162, 171 (1970). As indicated on the Transcript of Plea, defendant entered his *Alford* plea because he felt it was in his best interest to plead guilty.

Defendant also argues that the short time between entry of plea and motion to withdraw is evidence that denial of the plea was manifestly unjust. Defendant's reliance on *Handy* in support of this argument is misplaced. The Court in *Handy* considered the short time between entry of the plea and the motion to withdraw the plea. 326 N.C. at 540, 391 S.E.2d at 163. In *Handy*, however, the defendant's motion to withdraw his plea was entered *prior* to sentencing. *Id.* at 535, 391 S.E.2d at 160. As defendant's motion to withdraw his plea was entered post-sentencing and is subject to a different legal standard than a pre-sentencing motion, his argument is unpersuasive. *See id.* at 536, 539, 391 S.E.2d at 161, 162.

Defendant also alleges that weakness in the State's evidence which is insufficient to support the factual basis of the plea, further indicates the denial of his motion to withdraw his plea was manifestly unjust. As we held above, the State's evidence was sufficient to support the plea and, as such, defendant's argument is without merit.

Defendant provides the following additional reasons in support of his contention that denial of his motion to withdraw his guilty plea was manifestly unjust: the trial court's statements that the case should be tried; defendant's positive employment history and lack of a prior criminal record; that defendant did not understand the gravity of pleading; and that the record shows defendant is not a child abuser. We have reviewed all of defendant's allegations and find them to be cumulative and without merit.

## Conclusion

Although the trial court did not verbally make the inquiry as required by N.C. Gen. Stat. § 15A-1022, defendant voluntarily signed the Transcript of Plea and the court properly accepted defendant's plea. In light of the totality of the circumstances attendant in this case, we hold that the trial court met the statutory requirements prior to accepting defendant's plea and, as such, did not commit prejudicial error.

No error.

Judges STEPHENS and BEASLEY concur.